UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.                                                Case No: 8:19-cv-2166-T-35AEP

**WILLIAM HUTCHINSON,**
a/k/a **WILLIAM CLUXTON,**

    Defendant.

___

### ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff U.S. Securities and Exchange Commission's (the "Commission" or "Plaintiff") Motion for a Default Judgment Against Defendant William Hutchinson. (Dkt. 13) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion.

    **I.**     **BACKGROUND**

On August 29, 2019, Plaintiff filed a Complaint for Injunctive Relief against Defendant William Hutchinson a/k/a William Cluxton ("Defendant" or "Hutchinson") alleging violations of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act ("Count I") and violations of Section 10(b) of the Exchange Act ("Count II"). (Dkt. 1) On October 10, 2019, service of the Summons and Complaint was made upon Defendant's usual place of abode located at 549 E. Beech Street, Long Beach, New York 11561 by a process server as provided by Rule 4(e)(1) of the Federal Rules of Civil Procedure. (Dkt.

8) To date, Defendant has not filed an Answer or other responsive pleading in this case. On December 4, 2019, upon Plaintiff's Motion for entry of clerk's default, (Dkt. 9), the Clerk entered a default against Defendant. (Dkt. 10) Plaintiff now seeks entry of a final judgment of default against Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"). (Dkt. 11)

## II. LEGAL STANDARD AND DISCUSSION

Pursuant to Rule 55, to enter a default judgment, there must be a sufficient basis in the pleadings to support the relief sought. "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. See id. at 1544.

Plaintiff has set forth a valid cause of action for violations of the Securities Act and violations of the Exchange Act. (Dkt. 1) As set forth in the Complaint, Plaintiff alleges that from at least March 2018 through December 2018, Hutchinson, a resident of Sarasota,

---

1 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2

County Florida, conducted a fraudulent securities offering in the name of Symulto Coproration ("Symulto"), a Florida company formed by Hutchinson. (Id.)

Hutchinson represented on Symulto's website and in offering documents that, among other things, Symulto (i) was in the business of developing stored-value debit card services and software for international electronic gaming and sports books; (ii) had operations all over the world; (iii) had sales of over $251 million and net income of over $86 million; and (iv) had been audited by a large, multi-national accounting firm. (Id.) All of these statements were false, as Symulto never had any business operations, assets or income, or had been audited by the firm. (Id.) Plaintiff alleges that the misrepresentations contained in the offering documents and website were material and that Hutchinson knew they were materially false and misleading. (Id.)

Hutchinson hired stock promoters to locate investors for Symulto stock. (Id.) Through these promoters, Hutchinson raised at least $35,000 through the offer and sale of Symulto stock from four investors in Canada and misappropriated the investors' funds. (Id.) Specifically, after Hutchinson received the investors' funds, Hutchinson sent approximately 40% of the money ($14,000) back to the stock promoters and used almost all of the remaining $21,000 for personal expenses. (Id.) In September 2017, the state of Florida administratively dissolved Symulto's registration for failing to file an annual report. (Id.) However, during the fall of 2018, Hutchinson offered Symulto stock to at least two additional potential investors residing in the United States, during which time he repeated his false representations about Symulto's business, finances and rapid growth prospects and outside audit. (Id.)

By failing to defend against the Complaint, Defendant is deemed to have admitted the well-pleaded factual allegations against him. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). The Court concludes that Plaintiff's Complaint adequately establishes jurisdiction and states a claim for violations of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act and Section 10(b) of the Exchange Act against Defendant.

### A. Monetary Relief

Where, as here, a request for monetary relief is made, the Court may enter judgment without a hearing if "the plaintiff's claim against [the] defendant is for a sum certain or for a sum which can by computation be made certain," or if "the amount claimed is a liquidated sum or one capable of mathematical calculation," or if the movant submits sufficient evidence to support the request for damages. See S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005); Adolph Coors Co., 777 F.2d at 1544; United Artists Corp. v. Freeman, 605 F.2d 854 (5th Cir. 1979). Disgorgement is an appropriate remedy in cases of securities-related fraud, and courts are empowered to order wrongdoers to disgorge the amount of their illicitly garnered profits. SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978); see also SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (The "power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing."). The decision to grant prejudgment interest, as well as the rate at which interest is awarded, is within the Court's discretion. SEC v. Carrillo, 325 F.3d 1268, 1273 (11th Cir. 2003) (citing Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH, 141 F.3d 1434, 1447 (11th Cir.1998)). "Prejudgment interest is imposed, in the discretion of the trial court, to divest those found liable under the

securities laws of any benefit accrued from the use of the ill-gotten gain." SEC v. Yun, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001) (citation omitted).

Moreover, because disgorgement merely requires the return of wrongfully obtained profits and does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud, Congress has also authorized civil penalties for violations of the Securities and Exchanges Acts, which "a intended to punish the individual wrongdoer and to deter him and others from future securities violations." S.E.C. v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014). Specifically, for violations that involve fraud, deceit or manipulation and that directly or indirectly result in, or create the risk of, substantial losses to others, the respective statutes authorize a third-tier penalty in an amount up to the greater of $192,768 per violation or the defendant's gross pecuniary gain as a result of the violation(s). See 15 U.S.C. §§ 77t(d)(3), 78u(d)(3); 17 C.F.R. § 201.1004; 12 C.F.R. § 19.240 (inflationary adjustment increasing statutory penalties).

Plaintiff requests that the Court award monetary damages in the form of disgorgement with prejudgment interest in the amount of $38,190 and the maximum civil penalty authorized of $192,768. (Dkts. 13, 14) Plaintiff proffers the Declaration of Rebecca Hollenbeck in support of its Motion for Default Judgment. (Dkt. 13-1) Therein, Hollenbeck attests that Hutchinson admitted the allegations in the Complaint, specifically that he raised funds from the Canadian investors based on the material representations in the Symulto offering documents. (Id. at ¶¶ 10–11) Hollenbeck attests that between March and August 2018, the four investors invested approximately $35,000 in Symulto securities by making wire transfers to Symulto's bank account at Bank of America, which

was controlled by Defendants. (Id. at ¶ 12) Hollenbeck further avers that "Hutchinson used $14,000 of the approximately $35,000 (Hutchinson received $34,960 after wire fees were deducted) raised to pay stock promoters who had helped him solicit investors for Symulto. Of the remaining approximately $21,000, almost all of it was used to pay Hutchinson's personal expenses." (Id. at ¶ 13) Moreover, Hollenbeck avers that Hutchinson admitted during a voluntary telephone interview that he used the funds raised in connection with Symulto for personal expenses. (Id. at ¶ 14) Hollenbeck attests that the total amount to be disgorged, inclusive of prejudgment interest totaling $3,230, is $38,190. (Id. at ¶ 15) The Court finds that the sworn declaration is sufficient evidence to calculate Plaintiff's damages such that a hearing concerning this matter is not required.

### B. Permanent Injunctive Relief

Plaintiff also seeks entry of a permanent injunction against Defendant. Entry of a permanent injunction against a defendant who has violated securities laws is appropriate when the SEC establishes a reasonable likelihood of future violations. See SEC v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004). Such likelihood can be established by considering several factors, including the seriousness of the defendant's actions, the number of violations, the degree of scienter involved, the defendant's recognition of the wrongful nature of his conduct, the sincerity of defendant's assurances against future violations, and the likelihood that defendant's occupation will present opportunities for future violations. Id. (citing SEC v. Carriba Air, Inc., 681 F.2d 1318, 1322 (11th Cir. 1982)).

The Court concludes that based on the allegations of the Complaint, which are deemed admitted by Defendant's failure to respond, that Defendant engaged in blatant securities violations with a high degree of scienter. Further, because Defendant has

defaulted in this matter, the Court has no assurances that Defendant will refrain from this conduct in the future or that he has recognized the wrongful nature of his conduct. Moreover, while obey-the-law injunctions are prohibited,[2] the Plaintiff's proposed injunction informs Hutchinson of specific forbidden conduct and asks for tailored injunctive relief to prevent future violations.

### III. CONCLUSION

Accordingly, upon review of the well-pleaded allegations in the Complaint and based on Defendant's failure to respond, the Court finds that entry of a permanent injunction, disgorgement, prejudgment interest, and civil monetary penalties are appropriate remedies. The Court hereby **ORDERS** as follows:

1. Plaintiff U.S. Securities and Exchange Commission's Motion for a Default Judgment Against Defendant William Hutchinson, (Dkt. 13), is **GRANTED.**

2. The Commission's Proposed Judgment shall be entered under separate notice contemporaneously herewith.

3. The Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 10th day of November, 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

---

[2] The Eleventh Circuit has held that injunctions merely requiring a party to "obey the law" fail to meet the specificity demanded by Rule 65(d), Fed. R. Civ. P. See SEC v. Goble, 682 F.3d 934, 949-50 (11th Cir. 2012). However, the Eleventh Circuit also recognized the need for "some breadth" in SEC enforcement actions, and stated that "a broad, but properly drafted injunction, which largely used the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." Id. at 952. Here, although the SEC's proposed injunction makes reference to statutory and regulatory language and citations, it also includes specific language detailing the conduct that Defendant is prohibited from undertaking.